UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**UNITED STATES OF AMERICA,**      )
                                   )
    v.            )
                                   )   Criminal Action No. 18-112-05 (RMC)
**ERIC SCOTT,**                    )
                                   )
    **Defendant.** )
_____)

## MEMORANDUM OPINION

Eric Scott requests release pending trial pursuant to 18 U.S.C. § 3142. Mr. Scott is charged by indictment in eight counts of a fifty-five count indictment, including for one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of phencyclidine (PCP) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iv), and 841(b)(1)(B)(iv). *See* Indictment [Dkt. 1] at 3, 5-7, 13-14 (counts 1, 2, 42, 43, 44, 45, 46, and 47). The Court held a bond review hearing on June 5, 2019 and took the motion under advisement. After considering all of the arguments made in the briefs and at the hearing, the Court will deny Mr. Scott's Motion for Bond. This memorandum is prepared in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### I. FINDINGS OF FACT

**A. Description of the Offense**

At the detention hearing, the United States proceeded by proffer based on the Indictment and its detailed opposition brief. Gov't's Opp'n to Def.'s Mot. for Bond Review (Opp'n) [Dkt. 63]; *see also* Mot. for Review of Order of Detention by Agreement (Mot.) [Dkt.

1

61]. Mr. Scott stresses that none of the allegations against him involves the use of or possession of a weapon or any acts of violence and contests whether the car in which the drugs were located was his car. The Court makes the following findings of fact:

Mr. Scott was arrested in December 2017 after an investigation of narcotics trafficking in the Washington, D.C. area conducted from approximately November 2015 to March 2018 by the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). The investigation included controlled purchases by confidential sources assisting the FBI and ATF, physical surveillance, interception of wire and electronic communications, and execution of search warrants, among other tools.

Through interceptions of other target phones and those speaking with Mr. Scott's phone, the government concluded that Mr. Scott was engaged in the distribution of various narcotics, including PCP, cocaine base, cocaine, heroin, and marijuana. The prosecutor did not cite to specific calls or indicate what language or terms lead the government to believe Mr. Scott was engaged in the distribution of narcotics.

Surveillance units observed Mr. Scott on May 4, 2017 "conducting what was believed to be a drug transaction." Opp'n at 2. The government proffered that Mr. Jahi Marshall entered the front passenger seat of Mr. Scott's vehicle, sat for a short time, exited the vehicle, and walked behind some bushes to an area the government believed to be a "stash location." *Id.* at 3. Law enforcement attempted to stop Mr. Scott's vehicle after Mr. Marshall exited, but Mr. Scott fled the scene and eventually crashed. *Id.* Mr. Scott was not arrested on May 4, 2017, but was permitted to go to the hospital to seek medical assistance. However, en route to the hospital, Mr. Scott asked the paramedics to release him from their vehicle and they did so.

Law enforcement searched the vehicle that Mr. Scott had crashed after he left the scene for the hospital and recovered "a glut of illegal narcotics and drug trafficking paraphernalia, particularly PCP, cocaine base, cocaine, heroin, marijuana, a plastic funnel, numerous empty glass vials commonly used for PCP, a digital scale with white powdery residue, a package of razor blades and $3,677 in US Currency." *Id.* Law enforcement also recovered Mr. Scott's cellular telephone, which revealed "photos of large quantities of drugs on scales that appeared to be cocaine and heroin" as well as "a video of a large block of cocaine with Scott narrating that he does not put anything on his stuff." *Id.*

Mr. Scott was charged in a Complaint on May 5, 2017 although he was not apprehended and arrested until December 2017.

Agents executed a search warrant at Mr. Scott's residence on May 19, 2017 and recovered a vial of PCP, glass vials, a digital scale, and several cell phones. *Id.* at 4.

### B. Criminal History of the Defendant

Based on a preliminary criminal history calculation prepared by the United States Probation Office for the District of Columbia, the Court has information about Mr. Scott's criminal history. *See* Scott Pre-Plea Criminal History Calculation [Dkt. 36]. Mr. Scott has two prior criminal convictions and was under supervised release at the time of the alleged offense on a 2005 conviction in the United States District Court for the District of Columbia for Unlawful Distribution of 50 Grams or More of Cocaine Base.

## II. LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention

of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Where a judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on certain defendants based on the crimes charged, prior convictions, or similar considerations. *See* 18 U.S.C. § 3142(e)(2), (3). "[T]he indictment alone [is] enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community" because it demonstrates that a grand jury found there was probable cause to believe Mr. Scott committed the underlying offense. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Mr. Scott has been indicted on at least one count under the Controlled Substances Act, which carries a maximum term of imprisonment of more than ten years. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iv), and 841(b)(1)(B)(iv). This offense triggers the rebuttable presumption of § 3142(e)(3)(A), which provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis omitted). "While the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted). Thus, the defendant cannot offer mere speculation, but must present "some credible evidence" or basis to find that the presumption has been rebutted in his case. *Alatishe*, 768 F.2d at 371; *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (finding presumptions in § 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released"); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (finding the defendant came "forward with sufficient evidence to meet his burden of production, overcoming but not 'bursting' the presumption").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. It is "not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 289 F. Supp. 3d at 63 (quoting *United States v. Jessup*, 757 F.2d 378, 382 (1st Cir. 1985)). Rather, even after the defendant meets his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see also Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the

specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)).

## III. ANALYSIS

### A. Application of the Rebuttable Presumption

Mr. Scott concedes that the rebuttable presumption in favor of pretrial detention under 18 U.S.C. § 3142(e)(3)(A) applies here, but argues that it is rebutted by the fact that he is not being charged with possession or use of a firearm, or any other acts of violence, his strong family ties to the area, and his two different family members willing to serve as third-party custodians if he were to be released pending trial. In lieu of pretrial detention, Mr. Scott asks for release to a third-party custodian with conditions of home confinement and/or electronic monitoring. Mr. Scott stresses that home confinement with his sister will ensure his presence at all forthcoming hearings and trial.

Based on the parties' proffers and arguments, the Court finds that Mr. Scott has not rebutted the presumption that he is a danger to the community and a flight risk. As to the latter, he has provided information about his two sisters who have agreed to allow him to live with them and serve as his third-party custodian. He indicates that each one has lived in her current residence for a significant period. While he acknowledged at the hearing that he had successfully evaded arrest for seven months prior to December 2017,[1] he stated that he had fled out of concern for his safety. Accepting these facts as true, the Court does not find them—individually or collectively—sufficient to rebut the presumption of flight in view of Mr. Scott's

---

[1] The Court notes that Mr. Scott was arrested in this case after being stopped for a traffic violation in the State of Georgia.

initial actions to evade police in D.C., his flight to Georgia, and his failure to attempt to address the matters until he was apprehended involuntarily and extradited.

Mr. Scott has also failed to produce "some credible evidence contrary to the statutory presumption" of his dangerousness were he to be released. *Alatishe*, 768 F.2d at 371. Congress has determined that individuals who have been charged with drug offenses carrying a maximum term of imprisonment of ten years or more presumptively pose a danger to the community even if they have not engaged in violence. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (explaining that the presumption "represents Congress's general factual view about . . . the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). The recovered narcotics and narcotics paraphernalia, which formed the basis for the government's proffer and the Indictment, indicate that its evidence might persuade a jury that Mr. Scott was a distributor of a variety of narcotics in Washington, D.C. While the Court agrees that Mr. Scott was not also charged with a weapons offense or other act of violence, drug offenses themselves carry a presumption of dangerousness, which Mr. Scott has provided no evidence to rebut. Mr. Scott argued that the car with the drugs inside did not belong to him, but the Court accepts the facts proffered by the government that Mr. Scott fled from police in that same car and that materials implicating him were found there in addition to the drugs. At this point before trial, Mr. Scott has provided no evidence to rebut the government's proffer.

Accordingly, the undersigned finds that Mr. Scott has not rebutted the presumption that he should be detained before trial.

### B. Application of the Section 3142(g) factors

Even had Mr. Scott fully rebutted the presumption in favor of his detention and the Court were to consider the Bail Reform Act's four § 3142(g) factors, the conclusion would

7

be the same: Mr. Scott should be held without bond pending trial. The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *see also Taylor*, 289 F. Supp. 3d at 63.

1. *Nature and Circumstances of the Charged Offense*

The nature and circumstances of the charged offense favor detention. This factor directs a court to consider "the nature and circumstances of the offense charged" as a general matter, but notes especially those instances where "the offense is a crime of violence . . . or involves . . . a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, a grand jury has found probable cause to believe Mr. Scott (1) engaged in a drug trafficking conspiracy involving the sale of PCP from November 2015 to May 2017; (2) engaged in a drug trafficking conspiracy involving the sale of heroin, cocaine base, and fentanyl from November 2015 to November 2017; (3) possessed with intent to distribute 100 grams or more of PCP; (4) possessed with intent to distribute 100 grams or more of heroin; (5) possessed with intent to distribute 28 grams or more of cocaine base; (6) possessed with intent to distribute cocaine; and (7) possessed with intent to distribute marijuana. Mr. Scott's charges carry a mandatory minimum of twenty-five years imprisonment and up to life, demonstrating the seriousness of the alleged offenses. Further, the rebuttable presumption of dangerousness that Congress mandated for such drug offenses reflects its finding that individuals who are so charged

pose a substantial threat to the safety of the community were they to be released before trial and possible conviction. *See Bess*, 678 F. Supp. at 934. The nature and circumstances of the charged offenses favor continued detention.

    *2. The Weight of the Evidence*

The weight of the evidence against Mr. Scott is strong and also favors pretrial detention. The government identified Mr. Scott after he crashed the car he was driving in an attempt to evade police; the officers then found the indicted narcotics in that car. The government also indicates it has intercepted phone calls which allegedly detail Mr. Scott's involvement in drug trafficking during the course of the investigation. This evidence is sufficiently weighty to favor detention.

    *3. The History and Characteristics of Defendant*

The history and characteristics of Mr. Scott also favor detention. Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)-(B).

Mr. Scott has lifelong ties to the community and two sisters who are each willing to serve as a third-party custodian if he is released. However, despite such close ties, Mr. Scott successfully evaded law enforcement for seven months before he was ultimately found in Georgia and arrested, which, for these purposes, is the more salient fact.

Mr. Scott's prior conviction and the fact that he was on supervised release at the time of the alleged offense also favor detention. Mr. Scott's criminal history includes previous drug distribution and a violent crime, as well as repeated instances of revocations of release. His repeated history of revocations undermines his arguments that he would comply with more onerous conditions of release in this case.

### 4. Danger to the Community

The fourth factor, the danger to the community posed by Mr. Scott were he to be released, also weighs in favor of detention. The evidence proffered by the government suggests that Mr. Scott may have been a distributor of multiple narcotics in the D.C. area. "The distribution of large quantities of narcotics into the community poses a significant danger to communal safety." *United States v. Holroyd*, No. 17-234, 2018 WL 294529, at *3 (D.D.C. Jan. 4, 2018). The injury is not just to the drug user, nor just to the crime victim from whom a user might steal money or things of value to purchase drugs, but critically to the entire group of family and friends of the user. Further, the grand jury found probable cause to believe that Mr. Scott engaged in a conspiracy to distribute 1 kilogram or more of PCP, "a particularly dangerous illegal drug," *Taylor*, 289 F. Supp. 3d at 72, and "a drug that is a serious danger to the community." *United States v. Ware*, No. 09-69, 2009 WL 939632, at *2 (D.D.C. Apr. 7, 2009).

## IV. CONCLUSION

Having considered the evidence and the factors in § 3142(g), the rebuttable presumption under § 3142(e)(3)(A), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exists that would reasonably assure the safety of other persons or of the community if Mr. Scott were released and that he would be a flight risk. Therefore, Mr. Scott's motion for release will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: June 19, 2019

ROSEMARY M. COLLYER
United States District Judge